IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| INDUSTRIAL PRINT TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. | Case No. 3:15-md-02614-M <br><br> **THIS DOCUMENT RELATES TO ALL CASES** |
| O'NEIL DATA SYSTEMS, INC. and HEWLETT-PACKARD COMPANY | Case No. 3:15-cv-01101-M |
| QUAD/GRAPHICS, INC. and HEWLETT-PACKARD COMPANY | Case No. 3:15-cv-01103-M |
| VISTAPRINT U.S.A., INC. and HEWLETT-PACKARD COMPANY, <br><br> Defendants. | Case No. 3:15-cv-01106-M |

## MEMORANDUM OPINION AND ORDER

In this multidistrict patent litigation, Defendants seek to invalidate each of the asserted Variable Data Printing ("VDP") patent claims based on two alleged prior art systems—the ElectroPress System and the Indigo E-Print 1000 System.[1] Plaintiff Industrial Print Technologies, LLC ("IPT") has filed two motions to prevent Defendants from pursuing certain invalidity arguments based on these alleged prior art systems: (1) IPT's Motion to Strike Portions of Defendants' Invalidity Contentions [ECF #139]; and (2) IPT's Motion to Exclude Expert Testimony from Dr. John Paul Jones Regarding Invalidity Opinions Based on the ElectroPress System and Indigo E-Print 1000 System [ECF #277]. Simply stated, IPT argues that Defendants' invalidity contentions based on the E-Print 1000 and the ElectroPress Systems, and Dr. Jones's opinions based on those systems, are untimely. Defendants deny that their invalidity contentions are untimely. Alternatively, Defendants argue they had good cause to amend their contentions,

---

[1] There are five VDP Patents at issue in this case: U.S. Patent Nos. 5,729,665 ("the '665 Patent"), 5,937,153 ("the '153 Patent"), 7,274,479 ("the '479 Patent"), 7,333,233 ("the '233 Patent"), and 6,381,028 ("the '028 Patent").

and IPT is not prejudiced by any late disclosure. For the reasons stated, IPT's Motions are DENIED, to the extent the Motions seek to exclude expert opinion testimony or other evidence related to Defendants' invalidity contentions based on the E-Print 1000 and the ElectroPress Systems. To the extent the Motions seek other relief, the Court takes those matters under advisement.

## Background

Prior to this case being consolidated into an MDL case and transferred to this Court, Defendants Hewlett-Packard Company ("HP") and O'Neil Data Systems, Inc. ("O'Neil) served invalidity contentions related to the VDP patents on May 29, 2014 in the Eastern District of Texas. Defendants served additional contentions on March 27, 2015, after IPT added Defendant Quad/Graphics, Inc. ("Quad/Graphics") to the case. On June 12, 2015, after the MDL consolidation, Defendants amended their contentions under the Local Patent Rules of this District. By agreement, and as ordered by the Court, the June 2015 contentions were considered the Defendants' preliminary invalidity contentions under Local Patent Rule 3-3. The Court issued its Claim Construction Order on February 12, 2016, and on March 14, 2016, IPT served its final infringement contentions. Defendants served their final invalidity contentions on April 4, 2016. It is these April 4, 2016 invalidity contentions that form the basis of IPT's two Motions.

The discovery deadline established by the Court's Patent Scheduling Order was June 13, 2016. One week prior to that deadline, on June 7, 2016, the Court held a hearing to address various discovery issues. At the conclusion of the hearing, the Court ordered IPT to correct deficient infringement contentions. IPT served supplemental contentions in compliance with the Court's Order on July 8, 2016. IPT filed its Motion to Strike Portions of Defendants' Invalidity Contentions ("Motion to Strike") on July 22, 2016. By agreement, the parties extended the deadline for fact discovery to October 21, 2016, and the deadline for expert discovery to April

21, 2017. IPT filed its Motion to Exclude Expert Testimony from Dr. John Paul Jones Regarding Invalidity Opinions Based on the ElectroPress System and Indigo E-Print 1000 System ("Motion to Exclude") on June 30, 2017.

Defendants' June 2015 preliminary invalidity contentions identified documents called "E-Print 1000 I" and "E-Print 1000 II" as two specific prior art references. IPT argues that one of these references lacked sufficient detail to implicate the validity of the VDP patents, and the other reference bore no indication that it had been publicly available so as to qualify as prior art. IPT further argues that Defendants failed to allege that there was any "system" based on anything beyond what was disclosed by the documents. Although the June 2015 contentions included separate charts comparing the two E-Print documents to the VDP claims, IPT argues that Defendants did not identify any witnesses with knowledge about the E-Print documents or indicate that Defendants would contend the documents were evidence of any alleged prior art printing system.

In their April 2016 final invalidity contentions, Defendants disclosed an ElectroPress and Electrobook Press "System," citing publicly-available patents and new articles. Defendants also disclosed an alleged E-Print 1000 "System" and two new E-Print1000 publications. Throughout July and August 2016, Defendants disclosed at least six witnesses, Michael Christopher, Tom Bourman, Amir Gaash, David Leshem, Kobi Himelboim, and Richard Gaspar as having knowledge of the E-Print 1000 System. IPT deposed these individuals in August, October, and December 2016. After the depositions were complete, Defendants served Dr. Jones's expert report on IPT. In his expert report, Dr. Jones proffers three invalidity opinions directed to the VDP Patents, two of which are based on the ElectroPress and E-Print 1000 Systems.

By its Motion to Strike, IPT moves to strike all references to the art cited for the first time in Defendants' April 4, 2016 final invalidity contentions, specifically including all references to

the asserted VDP Patents to the ElectroPress and ElectroBook Press Systems and HP's E-Print 1000 "System."[2] IPT argues that Defendants should not be allowed to rely on any of these prior art references at summary judgment or at trial, either directly or through expert testimony, because Defendants' disclosure of its invalidity contentions based on these prior art references was untimely and without leave of court. IPT further argues that Defendants did not have good cause to add these new references and Defendants were not diligent in trying to discover the prior art references on which they now rely. Similarly, by its Motion to Exclude, IPT argues -that the Court should preclude Dr. Jones from presenting his invalidity theories based on the ElectroPress System and E-Print 1000 System. IPT insists that Defendants failed to disclose these systems as alleged prior art according to the deadlines established by this Court's Local Patent Rules, and that Defendants' failure to comply with the Rules resulted in prejudice to IPT, in that IPT was prevented from conducting necessary discovery regarding those systems.

---

[2] IPT's Motion to Strike also requests that the Court strike all references with respect to the asserted VDP Patents to the following references:

1. Xerox's Interpress System;
2. CompuMerge System;
3. U.S. Patent No. 5,237,655 to Statt et al.; and
4. Alleged prior sale of the patented technology (the VSI/CP Technology Sale);

as well as all references with respect to the asserted '106 patent to the following references:

1. U.S. Patent No. 6,166,825 to Shaklee;
2. U.S. Patent No. 5,676,475 to Dull;
3. European Patent No. 0 571 785 to Simon;
4. PCT Application No. US97020552 (published as WO 98/21044) to Gauthier; and
5. Alleged offer for sale/license to VideoJet, Cincinnati Print, and/or Scitex.

In their response to IPT's Motion to Strike, Defendants do not defend their inclusion of these additional references. Nor are these additional references the subject of IPT's Motion to Exclude. At this point in the litigation, it appears that the parties' dispute is limited to the ElectroPress and E-Print 1000 systems.

Defendants respond that their April 4, 2016 final invalidity contentions were specifically allowed by Local Patent Rule ¶¶3-6(b)(1) & (b)(2), because the invalidity contentions were served within 50 days after the Court entered its Claim Construction Order and IPT had already served its final infringement contentions, and also because amended invalidity contentions were necessary in light of the Court's construction of various disputed terms. Defendants also argue that they had good cause to amend and that they were diligent in searching for prior art. The Motions are ripe for determination.

**Legal Standards**

This Court follows the Northern District of Texas's Local Patent Rules, adopted in Amended Miscellaneous Order No. 62 ("Local Patent Rules"). Local patent rules aid in efficiently managing the various stages of patent litigation. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006); *Summit 6 LLC v. HTC Corp.*, 2015 WL 11117869, at *1 (N.D. Tex. Jan. 8, 2015). Local Patent Rule 3-1 "requires a party claiming patent infringement to disclose its asserted claims and preliminary infringement contentions early in the litigation so that 'the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial, and beyond.'" *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, 2012 WL 9148157, at *2 (N.D. Tex. Feb. 10, 2012). Shortly after service of infringement contentions, defendants serve preliminary invalidity contentions, identifying "each item of prior art that allegedly anticipates each asserted claim or renders it obvious," including combinations of prior art. Local Patent Rule 3-3. "The purpose of this structure is to streamline the discovery process by narrowing the issues for claim construction and trial." *Summit 6 LLC*, 2015 WL 11117869, at *1.

Under the Local Patent Rules, failure to comply with the requirements for preliminary infringement and invalidity contentions, including requirements of specificity and detail, may result in appropriate sanctions. Local Patent Rules 3-1(b), 3-3(b). The rules do not specify the actions the Court may or must take if there is non-compliance with the requirements for disclosure of contentions. However, the Federal Circuit has held that because local patent rules are "essentially a series of case management orders," the Court may impose "any 'just' sanction for the failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.'" *O2 Micro Int'l*, 467 F.3d at 1363. Local Patent Rule 3-3 provides that preliminary invalidity contentions must be served within 45 days from the date infringement contentions are served. "Each party's preliminary infringement contentions and preliminary invalidity contentions will be deemed to be that party's final contentions." Local Patent Rule 3-6. However, within 50 days from the date the claim construction order is filed, final invalidity contentions may be served without leave of court if (1) "a party claiming patent infringement has served its final infringement contentions," or (2) "the party opposing a claim of patent infringement believes in good faith that the presiding judge's claim construction ruling so requires." *Id*.

Apart from these two exceptions, the Local Patent Rules provide that "[a]mendment of preliminary or final infringement contentions or . . . invalidity contentions . . . may be made only by order of the presiding judge upon a showing of good cause." Local Patent Rule 3-7. "Good cause . . . may include newly discovered instrumentalities, newly discovered bases for claiming infringement, or newly discovered prior art references." *Id*. A party seeking amendment of its preliminary invalidity contentions must state "that the newly discovered instrumentalities, newly

discovered bases for claiming infringement, or newly discovered prior art references were not known to that party prior to the motion despite diligence in seeking out the same." *Id*. "[U]nlike the liberal policy for amending pleadings, the philosophy behind amending claim charts . . . is decidedly conservative." *Genetech, Inc. v. Amgen, Inc*., 289 F.3d 761, 774 (Fed. Cir. 2002). "Good cause," according to the Federal Circuit, "requires a showing of diligence." *O2 Micro Int'l*, 467 F.3d at 1366. "The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *Id*. Courts generally have broad discretion to grant untimely motions to supplement invalidity or infringement contentions, but in exercising that discretion, four factors are typically considered: "(1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice." *Mobile Telecomms., Techs., LLC v. Blackberry Corp*., 2015 WL 12698061, at *1 (N.D. Tex. May 19, 2015) (Lynn, J.).

Under Local Patent Rule 3-6, within 50 days from the date the presiding judge's claim construction ruling is filed, a party opposing a claim of patent infringement may serve final invalidity contentions without leave of court that amend its preliminary invalidity contentions if "the party opposing a claim of patent infringement believes in good faith that the presiding judge's claim construction ruling so requires." Local Patent Rule 3-6(b). This exception permits a party to respond to an unexpected claim construction by the court, but does not mean that after every claim construction order, new infringement or invalidity contentions may be filed. *See Cell & Network Selection LLC v. AT&T Inc.*, 2014 WL 10727108, at *2 (E.D. Tex. Nov. 10, 2014) ("Traditionally, the Court's adoption of another's party construction alone is not sufficient to support a party's good faith belief it was surprised by the Court's ruling." (internal quotation marks omitted)); *Nike, Inc. v. Adidas Am. Inc*., 479 F. Supp. 2d 664, 667–68 (E.D. Tex. 2007)

7

("A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions.").

**Analysis**

IPT seeks to strike Defendants' invalidity contentions and Dr. Jones's opinions based on the ElectroPress System and the E-Print 1000 System on the ground that Defendants did not timely disclose their invalidity theories. IPT argues that the Local Patent Rules do not permit "free amendment" of invalidity contentions; rather, the Rules allow amendments only in response to changed infringement contentions or unexpected claim constructions. IPT further contends that it reasonably relied on Defendants' June 2015 invalidity contentions in developing its case strategy and focusing its discovery efforts, and that permitting Defendants to present the ElectroPress and E-Print 1000 defenses through Dr. Jones, or otherwise, would prejudice IPT's ability to try this case.

Defendants respond that their April 2016 invalidity contentions were specifically allowed by the plain language of Local Patent Rule 3-6(b)(1) and 3-6(b)(2). Defendants dispute IPT's assertion that amendments are allowed only in response to changed infringement contentions or unexpected claim constructions. Defendants further argue that good cause exists to allow them to amend their infringement contentions based on newly discovered prior art, that was not previously known to Defendants despite their diligence. Defendants also dispute that IPT suffered any prejudice and point out that the parties extended the deadline for fact discovery to give IPT an opportunity to learn more about the ElectroPress and E-Print 1000 Systems.

The Court agrees with IPT that Defendants were not entitled to serve new invalidity contentions based on the ElectroPress and E-Print 1000 Systems under Local Patent Rule 3-6(b)). Local Patent Rule 3-6(b) provides:

> Within 50 days from the date the presiding judge's claim construction ruling is filed, each party opposing a claim of patent infringement may serve its final invalidity contentions without leave of court that amend its preliminary invalidity contentions with respect to the information required by paragraph 3-3 if:
>
>> (1) a party claiming patent infringement has served its final infringement contentions under paragraph 3-6(a); or
>>
>> (2) the party opposing a claim of patent infringement believes in good faith that the presiding judge's claim construction ruling so requires.

Misc. Order No. 62 ¶ 3-6(b). IPT amended its preliminary infringement contentions on March 14, 2016, 30 days after the Court entered its claim construction order, serving amended contentions pursuant to Rule 3-6(a). Defendants served their final invalidity contentions 20 days later. Contrary to Defendants' assertion, however, Rule 3-6(b)(1) does not allow Defendants to amend their invalidity contentions "as a matter of right." Instead, Defendants' amendments must respond to IPT's amendments. To allow complete freedom to amend invalidity contentions simply because IPT amended its infringement contentions pursuant to the Court's Claim Construction Order would undermine the purpose and function of the Patent Rules, which is to provide adequate notice and information to all parties and ensuring full, timely discovery. Defendants do not challenge IPT's characterization of its amended contentions as "minimal;" nor do they dispute that their amended invalidity contentions are much broader and not directly responsive to IPT's amendments. Under these circumstances, Defendants were not entitled to make broad changes to their invalidity contentions under Local Patent Rule 3-6(b)(1).

This conclusion is consistent with decisions from other courts considering the same issue. In particular, the Eastern District of Texas, which has an identical Patent Rule, has held that Rule 3-6(b) does not give Defendants free rein to assert new defenses completely unrelated to Plaintiff's amendments. Rather, there must be a nexus between the defendant's proposed amendments and the plaintiff's amendments. *See VirnetX Inc. v. Cisco Systems, Inc.*, 2012 WL

12546881, at *4 (E.D. Tex. Oct. 22, 2012). Although Defendants cite to other authority from the Northern District of California holding that there is no requirement that changes to invalidity contentions must be related to corresponding changes to infringement contentions, *see Fresenius Medical Care Holding, Inc. v. Baxter International*, 2005 WL 2043047, at *1-2 (N.D. Cal. Aug. 24, 2005), the Court finds that the *Fresenius* decision is contrary to the purpose of the Patent Rules and efficient case management.

Similarly, Defendants are not entitled to amend their invalidity contentions under Rule 3-6(b)(2). This exception permits a party to respond to an unexpected claim construction by the Court, but does not mean that after every claim construction order, new infringement or invalidity contentions may be filed. Defendants do not identify any surprise in the Court's Claim Construction Order that necessitated amendment of their invalidity contentions. Instead, Defendants rely solely on the fact that the Court's Claim Construction Order was 166 pages long, construed thirty-five terms, and defined twenty-one terms as having their "plain and ordinary meaning," where Defendants had proposed narrower constructions. Defendants argue that these changes "naturally prompted" Defendants to evaluate the scope of identified prior art in light of the Court's constructions. However, "[a] party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions." *Nike,* 479 F. Supp. 2d at 667–68; *see also Cell & Network Selection LLC*, 2014 WL 10727108, at *2 (holding that the court's adoption of another's party construction is not sufficient, by itself, to demonstrate surprise). Without a more particularized showing that the Court's adopted construction was unexpected or a surprise, the Court finds that Defendants are not entitled to amend their invalidity contentions under Rule 3-6(b)(2).

However, the Court determines that Defendants have shown good cause under Patent Rule 3-7 for allowing their April 2016 invalidity contentions. As stated, "good cause" requires

the party seeking to amend its contentions to establish its diligence. The Court's discretion as to whether to allow an amendment is informed by (1) the moving party's explanation for its failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Mobile Telecomms., Techs.*, 2015 WL 12698061, at *1.

With respect to the ElectroPress System, Defendants explain that they originally located U.S. patent number 5,136,316 ("the '316 Patent") when doing additional research in view of the claim construction issues. They claim the '316 Patent closely matches the Court's Claim Construction findings for the VDP Patents; accordingly, Defendants took a closer look at the '316 Patent in light of the Court's constructions. Defendants located one of the inventors, Richard Gaspar. Mr. Gaspar revealed to Defendants that the '316 Patent disclosed the process and configuration used in the ElectroPress, which was an actual physical prior art system sold by AM International Incorporated. Defendants state that they did not know the ElectroPress System existed prior to April 2016, just shortly before they filed their 2016 Invalidity Contentions. Further, Defendants assert that the ElectroPress System was difficult to discover. The system apparently has not been for sale since 1986. Although the parties disagree as to how easy it was to obtain articles about the ElectroPress, it is undisputed that the '316 Patent does not mention the system. Although the Court's Claim Construction Order does not give Defendants unlimited authority to amend their invalidity contentions, it was entirely reasonable for Defendants to review the prior art in view of the Court's Order. Defendants appropriately reexamined the '316 Patent in light of the Court's Claim Construction Order, and the close match gave Defendants good reason to conduct additional research related to the '316 Patent. Defendants acted diligently in contacting Mr. Gaspar, a listed inventor on the '316 Patent, to discover facts relating to the ElectroPress system.

IPT argues the facts show a lack of diligence, in that Defendants did not even begin searching for relevant prior art until after the Court issued its Claim Construction Order. As discussed, the Court's Claim Construction Order did not give Defendants an automatic excuse to amend their invalidity contentions; nor did Defendants show the Claim Construction Order constituted such a surprise that amendment would be permitted in response to a completely unexpected construction. However, Defendants acted reasonably in reviewing all prior art in view of the claim construction. Upon recognizing a close similarity between the '316 Patent and the Court's construction, Defendants' counsel was prudent, and diligent, in looking more closely at the prior art.

The E-Print 1000 System was also hard to find. The documents that prompted the amendments were identified as part of Defendants' ongoing discovery efforts. The documents, which were not stored in electronic format, were not identified earlier because they had to be retrieved from an archival warehouse in Israel. Defendants' counsel did not receive the documents until March 10, 2016. IPT contends that any diligent search would have identified the E-Print 1000 System much sooner. The E-Print 1000 System was an Indigo system, and the documents regarding the system came from HP's own files after acquiring Indigo. IPT further points out that the individuals with knowledge of the system are HP employees.

With respect to both the E-Print 1000 and the ElectroPress Systems, Defendants moved promptly to amend their invalidity contentions. Defendants received the E-Print 1000 documents on March 10, 2016 and learned of the ElectroPress system on April 1, 2016 when Defendants spoke with an inventor of the '316 Patent. Defendants filed their final invalidity contentions on April 4, 2016. "To show good cause to amend invalidity contentions, the moving party must both show that it diligently searched for and analyzed prior art and that it promptly disclosed any newly discovered references." *Summit 6 LLC*, 2015 WL 11117869, at *2. The Court finds that

12

Defendants carried the burden of establishing diligence with regard to the E-Print 1000 and the ElectroPress Systems.

As to the second factor, the importance of the amendments, IPT argues the amendments cannot be important because Defendants never sought leave to amend. This argument mischaracterizes the facts. Defendants did not file a motion for leave to amend prior to serving their April 2016 invalidity contentions because they were operating under the mistaken assumption that their amendments were expressly permitted by the Local Patent Rules because they were made within 50 days of the Court's Claim Construction Order. Further, Defendants sought leave to amend in their response to IPT's Motion to Strike. Additionally, the importance of the April 2016 contentions is evident in that Defendants' final election of prior art is strictly related to the E-Print 1000 and ElectroPress Systems and their supporting publications. Dr. Jones's expert report on the invalidity of the VDP Patents is also strictly related to the two disputed systems.

Regarding prejudice, IPT argues that it prepared its case based on Defendants' June 2015 contentions, which disclosed invalidity based solely on documents and patents, and that the April 2016 contentions, which disclose invalidity based on systems, represents a "sea-change shift" in theories for which it had no opportunity to address. IPT contends that Defendants' late disclosure of their true invalidity contentions prevented IPT from raising additional claim construction disputes and conducting adequate discovery. IPT asserts that it would have taken full discovery of the actual purported systems and the circumstances surrounding their sale or offer for sale, if only it had known earlier in the case about Defendants' theories. Defendants respond that IPT was not prejudiced because there were still five months of discovery after they served the April 2016 contentions, of which IPT did not avail itself. Defendants identified Christopher, Bourman, Gaspar, Gaash, Leshem, and Himelboim approximately two months before fact discovery closed.

IPT actually deposed several of these individuals and elected not to depose others. In particular, IPT deposed Christopher, the individual who was responsible for coding the functionality at issue in the ElectroPress System. IPT chose not to depose Landa and Himelboim, and did not request any additional depositions. Moreover, IPT waited more than four months after Defendants served their final invalidity contentions to object. The fact that over five months remained in the fact discovery period at the time the 2016 invalidity contentions were served, and that IPT did not promptly object to the allegedly improper amendment, weighs against finding IPT was prejudiced by the late amendments. *See Yodlee, Inc. v. CashEdge, Inc.*, 2007 WL 1454259, at *3 (N.D. Cal. May 2007) (finding no prejudice in allowing amended invalidity contentions where nonmovant had not yet filed any substantive motion and there were more than two months remaining before the fact discovery cutoff); *Fresenius*, 2005 WL 2043047, at *2 (finding no prejudice where amendments allow time to conduct fact and expert discovery). Also, IPT has not shown that it was prejudiced by the 2016 invalidity contentions because IPT's inventor, Mr. Gauthier, admitted he was aware of the ElectroPress System in the early 1990s.

With respect to the final factor, the availability of a continuance to cure prejudice, the Court notes that neither party has asked to delay this litigation. Defendants reiterate that IPT had time after the 2016 invalidity contentions to conduct discovery, and IPT does not argue that it still needs time to conduct discovery.

IPT relies on this Court's decision in *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 3:13-cv-4987-M, Mem. Opn. & Order [ECF #209] (N.D. Tex. May 30, 2017), to strike late invalidity contentions, but the facts presented in this case are distinguishable and dictate a different result. In particular, the timing of events in the two cases is very different. In *iLife*, the defendant moved to amend its invalidity contentions four months before trial was scheduled and approximately three and a half months after the close of fact discovery. Here, the challenged contentions were

served more than five months before the close of fact discovery, and over eight months before expert reports. This case is not currently set for trial.

## Conclusion

The Court DENIES IPT's Motion to Exclude Expert Testimony from Dr. John Paul Jones Regarding Invalidity Opinions Based on the ElectroPress System and Indigo E-Print 1000 System [ECF #277] and IPT's Motion to Strike Portions of Defendants' Invalidity Contentions [ECF #139], to the extent the Motion to Strike addresses the ElectroPress System and Indigo E-Print 1000 System.

To the extent the Motions seek other relief, the Court takes those matters under advisement.

DATED: January 11, 2018.

_____
BARBARA M. G. LYNN
CHIEF JUDGE